(text box: 1) NO. 5-02-0063

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

SURESH CHAND, M.D., ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Madison County.

) 

)

v. ) No. 99-MR-301

)

ANN PATLA, Director of Public Aid, and )

THE DEPARTMENT OF PUBLIC AID, ) Honorable

   ) Daniel J. Stack,

Defendants-Appellants. ) Judge, presiding.

__________________________________________________________________________

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

The plaintiff, Suresh Chand, M.D., filed a complaint in the circuit court of Madison County for judicial review of the administrative action of the Illinois Department of Public Aid (the Department) terminating his eligibility as a vendor of medical services.  The circuit court reversed the Department's decision to terminate the plaintiff from eligibility to participate in the State's medical assistance program and ordered the Department to pay the plaintiff $42,650 in attorney fees. 

On appeal, the Department asserts that the case is moot, that the circuit court improperly awarded attorney fees, and that the plaintiff's failure to answer a questionnaire or provide copies of his professional licenses was a sufficient, alternative basis upon which to affirm the Department's determination.  We affirm in part and reverse in part.

FACTS

In a letter dated February 9, 1998, and again in a letter dated March 16, 1998, the Department, through the Bureau of Medical Quality Assurance (the Bureau), indicated that the plaintiff had "been selected for peer review *** to determine [the plaintiff's] compliance with Department policies."  The Bureau requested that the plaintiff produce the medical charts of 15 patients and attached a list of the 15 patients with their recipient identification numbers.  The Bureau requested the patient records "in their entirety[,] including the initial visit, all progress notes, operative reports, consultation reports, hospitalization records[,] *** and diagnostic services."  The Bureau also enclosed a physician's information questionnaire and requested that the plaintiff return the questionnaire within two weeks, along with copies of his current license, Illinois controlled substance license, Drug Enforcement Agency certificate, and continuing education certificates for the previous three years. 

On February 23 and March 30, 1998, the plaintiff's attorney responded to the Department's request, stating that because the Department had failed to comply with the Mental Health and Developmental Disabilities Confidentiality Act (the Confidentiality Act) (740 ILCS 110/1 
et seq.
 (West 2000)), the plaintiff would not honor the Department's request. 

On May 22, 1998, the Department commenced an administrative proceeding seeking to terminate the plaintiff's eligibility to participate in the State's medical assistance program, which provides medical care to the State's public aid recipients.  The administrative law judge (ALJ) heard evidence and argument on October 27 and 28, 1998; February 5 and 22, 1999; and March 8 and March 22, 1999.

Marilyn Harvatin, a health facilities surveillance nurse with the Bureau's peer review unit, testified that she participated in the Bureau's request for the recipient records, the physician questionnaire, and copies of professional licenses for the peer review committee.  Harvatin asserted that the purpose of the peer review was to determine whether the plaintiff was in compliance with the Department's policies and whether recipients of the medical assistance program were receiving quality care.  Harvatin testified that she did not contact or attempt to acquire authorizations from the 15 recipients whose medical records the Bureau requested.  Harvatin explained that when a recipient signs up with the program, the recipient understands that the recipient's records might be reviewed.  

Harvatin stated that the physician's questionnaire was essential to the peer review process.  The questionnaire requested information regarding the provider's age, education, certification, licensing, and practice, 
i.e.
, how many offices and employees the provider has; whether the provider has an interest in a pharmacy, transportation company, or long-term care company; how many patients the provider treats; and whether the provider has a laboratory.

On April 23, 1999, the ALJ recommended that the plaintiff's eligibility to participate in the medical assistance program be terminated.  The ALJ held that the plaintiff wrongfully refused to produce copies of the medical records.  The ALJ determined that the plaintiff was permitted under the Confidentiality Act to supply the records to the Department because doing so was pursuant to a peer review of his work, a specific exception to the disclosure requirements under the Confidentiality Act (740 ILCS 110/9 (West 2000)).  The ALJ further determined that the Confidentiality Act required the plaintiff, as the medical provider, to inform his patients that he was disclosing their records to the Bureau.  

The ALJ held that the plaintiff also wrongfully refused to produce his professional documents and the physician's information questionnaire.  The ALJ held that the information sought in the questionnaire was current and updated information to ensure an accurate basis on which to conduct a peer review.  The ALJ rejected the plaintiff's claims that no specific rules or handbook policies required him to provide such information, that the Department already had the information, or that the plaintiff was being harassed by the Bureau.  The ALJ determined that the plaintiff violated sections 140.12(f) and 140.16(a)(1) and (a)(4) of the Department's regulations, as well as paragraph four of the plaintiff's provider agreement.

On June 9, 1999, the director adopted the ALJ's recommended decision and terminated the plaintiff's eligibility to participate in the medical assistance program.

On June 17, 1999, the plaintiff sought administrative review in the circuit court.  He alleged that the Department's decision was incorrect because the files that he refused to provide the Department were protected under the Confidentiality Act and that the Department failed to follow the procedures outlined in the Confidentiality Act.

On April 7, 2000, the circuit court continued the proceedings for three months, noting that a separate appeal was pending in the appellate court between the Department and the plaintiff, and that it concerned issues raised in the present case.  In the separate appeal, this court, on April 26, 2000, affirmed the Department's termination of the plaintiff's eligibility to participate as a vendor in the medical assistance program because the plaintiff had provided medical goods and services to public aid patients that placed them at risk of harm and that were of a grossly inferior quality.  
Chand v. Wright
, No. 5-98-0691 (2000) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)).  On October 4, 2000, the Illinois Supreme Court denied the plaintiff's petition for leave to appeal.  
Chand v. Wright
, 191 Ill. 2d 527 (2000). 

In its November 20, 2000, order, the circuit court held that, despite the separate appeal terminating the plaintiff's eligibility, the present cause was not moot and that the Department's decision was not against the manifest weight of the evidence but that the Department's regulatory requirement to provide psychiatric records of patients without their consent violates the Confidentiality Act.  The circuit court also held that the plaintiff's failure to complete the questionnaire did not constitute a sufficient basis for termination because the plaintiff did not refuse to supply the questionnaire and supporting documents.

On December 27, 2000, the plaintiff filed a motion for costs and attorney fees, pursuant to the Illinois Administrative Procedure Act (5 ILCS 100/10-55(c) (West 2000)) and pursuant to the Confidentiality Act (740 ILCS 110/15 (West 2000)), seeking a total fee of $42,650.  On December 23, 2001, the circuit court awarded the plaintiff his attorney fees and costs.  The Department filed its timely appeal.

ANALYSIS

Mootness

The Department argues that because the plaintiff's eligibility to participate in the program had already been terminated, this case was moot prior to the circuit court's order, and therefore, the Department requests that we vacate the circuit court's order.  We decline to do so.

It is well-settled that the existence of an actual controversy is an essential requisite to appellate jurisdiction.  
Meyer v. Marshall
, 62 Ill. 2d 435 (1976); 
La Salle National Bank v. City of Chicago
, 3 Ill. 2d 375 (1954).  In 
Meyer
, the Illinois Supreme Court held that the appellate court had erred in reviewing the merits of the case to determine whether the plaintiffs were entitled to costs or attorney fees, because the substantive questions had become moot.  
Meyer
, 62 Ill. 2d at 442.  The Illinois Supreme Court stated:

"We have repeatedly held that where it is no longer possible to render effective relief on the ultimate merits of a controversy, a reviewing court should not undertake a review of the controversy simply because liability for costs may be at stake."  
Meyer
, 62 Ill. 2d at 441.

See also 
La Salle National Bank
, 3 Ill. 2d at 378-79 (where issues involved in the trial court no longer exist, the appellate court will not review a case merely to decide moot or abstract questions, to establish a precedent, to determine the right to or the liability for costs, or in effect, to render a judgment to guide potential future litigation).

The record reveals that on April 26, 2000, this court affirmed the Department's separate and previous termination of the plaintiff's eligibility to participate as a vendor in its medical assistance program (
Chand v. Wright
, No. 5-98-0691 (2000) (unpublished order under Supreme Court Rule 23)), and on October 4, 2000, the Illinois Supreme Court denied the plaintiff's petition for leave to appeal) (
Chand v. Wright
, 191 Ill. 2d 527 (2000)).  Because the plaintiff has been previously terminated, on alternative grounds, from eligibility to participate as a vendor in the medical assistance program, it is no longer possible to render the plaintiff effective relief on the ultimate merits of the instant controversy.  

Although we would therefore be precluded from reviewing the controversy simply because liability for attorney fees is at stake, an exception to the mootness doctrine exists where collateral legal consequences survive the expiration of the order under review.  
In re Jessie B.
, 327 Ill. App. 3d 1084, 1088 (2002).  In 
In re Jessie B.
, 327 Ill. App. 3d at 1088, the court held that collateral legal consequences survived an order of delinquency because in the future a history of prior delinquency might be considered in aggravation against a defendant convicted of a crime as an adult.  Similarly, in the present case, collateral legal consequences survive the expiration of the order terminating the plaintiff from eligibility to participate in the medical assistance program, because the order may be used against the plaintiff in the future when he applies for reinstatement to the program after one year, pursuant to the Illinois Public Aid Code (305 ILCS 5/12-4.25(D) (West 2000)).  Thus, because collateral legal consequences survive the expiration of the order under review, we agree with the trial court that the case 
sub judice
 is not moot, and we address the merits.

Attorney Fees

The Department asserts that the Bureau's request for medical records was made pursuant to a peer review and was consistent with the Confidentiality Act (740 ILCS 110/9 (West 2000)).  The Department asserts that the plaintiff must disclose to the recipients that he might release their medical records and that the Department therefore did not act improperly.  Although we agree that the Bureau's request was made pursuant to the peer review exception to the disclosure requirements under the Confidentiality Act, we disagree with the Department's contention that the plaintiff must disclose to the recipients that he might release their psychiatric medical records.  

Section 10-55(c) of the Illinois Administrative Procedure Act provides, in pertinent part:

"In any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the agency's exceeding its statutory authority or the agency's failure to follow statutory procedures in the adoption of the rule, the court shall award the party bringing the action the reasonable expenses of the litigation, including reasonable attorney's fees."  5 ILCS 100/10-55(c) (West 2000).

"A rule is defined as a principle, procedure[,] or regulation governing conduct or action.  (See The Random House Dictionary (unabr. ed. 1966).)"  
Ackerman v. Department of Public Aid
, 128 Ill. App. 3d 982, 983 (1984).  

The Confidentiality Act provides that "any record kept by a therapist or by an agency in the course of providing mental health or developmental disabilities service to a recipient" and "any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient" *** "shall be confidential and shall not be disclosed except as provided in this Act."  740 ILCS 110/2, 3(a) (West 2000).

Section 9 of the Confidentiality Act provides:

"In the course of providing services and after the conclusion of the provision of services, a therapist may disclose a record or communications without consent to:

*** 

(2) persons conducting a peer review of the services being provided;

* * * 

Information may be disclosed under this Section only to the extent that knowledge of the record or communications is essential to the purpose for which disclosure is made and only after the recipient [the person receiving mental health or developmental disabilities services (740 ILCS 110/2 (West 2000))] is informed that such disclosure may be made."  740 ILCS 110/9 (West 2000).

"[A]nyone seeking the nonconsensual release of mental health information faces a formidable challenge and must show that disclosure is authorized by the Act."  
Norskog v. Pfiel
, 197 Ill. 2d 60, 72 (2001).  As the United States Supreme Court has noted:

"Effective psychotherapy *** depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears.  Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace.  For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment."  
Jaffee v. Redmond
, 518 U.S. 1, 10, 135 L. Ed. 2d 337, 345, 116 S. Ct. 1923, 1928 (1996).

We reject the plaintiff's contention that because Harvatin was a nurse who had never worked in the mental health field, she was not a peer and that, therefore, the Bureau's request was not made pursuant to a peer review.  Considering Harvatin's testimony that the Bureau's request for information was contemplated for a peer review, along with the letters notifying the plaintiff of the peer review, the Department's determination that the Bureau's request was made pursuant to a peer review and pursuant to section 9 of the Confidentiality Act (740 ILCS 110/9 (West 2000)) was not clearly erroneous.  See 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998).  

However, we disagree that section 9 requires the plaintiff, as the medical provider, to disclose to the recipients that he might release their medical records.  Recognizing that the possibility of disclosure impedes the development of the confidential relationship between the medical provider and the psychiatric recipient (see 
Jaffee
, 518 U.S. at 10, 135 L. Ed. 2d at 345, 116 S. Ct. at 1928), we hold that, when conducting a peer review of the services being provided, the Department, who is seeking the nonconsensual release of mental health information, is required to limit its request to records or communications essential for the purpose for which the disclosure is made and to inform the recipient that such disclosure might be made.  See 740 ILCS 110/9 (West 2000).  

We next consider whether the Department informed the recipients that such a disclosure might be made.  See 740 ILCS 110/9 (West 2000).  Harvatin testified that recipients understand that their records might be reviewed, but Harvatin admitted that she did not contact any of the 15 recipients before requesting their mental health medical records from the plaintiff.  In the circuit court's November 20, 2000, order, the court directed the Department to provide consent forms or a showing of notice to the 15 recipients whose medical records the Department requested.  However, the Department, in its brief, asserts that because the plaintiff was terminated for independent reasons, the Department "did not pursue the question of whether the fifteen patients had received sufficient disclosures" because "the question was entirely academic."  

Under Supreme Court Rule 323 (166 Ill. 2d R. 323), the appellant must provide an adequate record on appeal sufficient to establish reversible error, and any doubt arising from the incompleteness of the record will be resolved against the appellant.  
Reed v. Hoffman
, 48 Ill. App. 3d 815, 819 (1977).  The Department failed to supplement the record with evidence that the recipients had previously been informed that a disclosure of their mental health information might be made.  As a result, we resolve the issue–whether the Department informed the recipients that a disclosure of their mental health information might be made–against the Department.  

Thus, the Department's procedures for acquiring the recipients' mental health information, for the purposes of peer review, without first notifying the recipients that such a disclosure might be made, did not comply with the Confidentiality Act (see 740 ILCS 110/9 (West 2000)), and had the effect, force, and impact of a rule (see 
Ackerman
, 128 Ill. App. 3d at 984).  The plaintiff had the Department's rule invalidated, and the trial court correctly awarded attorney fees to the plaintiff pursuant to the Illinois Administrative Procedure Act (5 ILCS 100/10-55 (West 2000)).  See 
Ackerman
, 128 Ill. App. 3d at 984 (the argument that an attorney fee award was barred by sovereign immunity was devoid of merit).  We therefore affirm that part of the circuit court's judgment relating to the requested medical records.

Physician Questionnaire and Licenses

The Department asserts that the plaintiff's termination based on his failure to answer the questionnaire or provide copies of his professional documents was not clearly erroneous because the information concerned the plaintiff and his practice and should have been promptly provided as required by state regulations.  The plaintiff counters that because he may have completed and updated similar informational requests, he should not be required to do so on the whim of the Department, that no regulation required the disclosure of such information, and that as a result the plaintiff was improperly terminated on this basis.  We disagree with the plaintiff.  

Section 140.12(f) of the Illinois Administrative Code requires that the provider shall agree to "[f]urnish to the Department, in the form and manner requested by it, any information it requests regarding payments for providing goods or services[] or in connection with the rendering of goods or services or supplies to recipients by the provider [or] his agent, employer[,] or employee."  89 Ill. Adm. Code §140.12(f) (2000).

Section 140.16(a)(4) of the Illinois Administrative Code provides for the termination of a vendor's eligibility to participate in the medical assistance program when the Department determines that the vendor "has failed to furnish any information requested by the Department regarding payments for providing goods or services[] or has failed to furnish all information required by the Department in connection with the rendering of services or supplies to recipients of public assistance by the vendor [or] his agent, employer[,] or employee."  89 Ill. Adm. Code §140.16(a)(4) (2000).

Paragraph four of the plaintiff's provider agreement required the plaintiff "on a continuing basis to comply *** with all applicable Federal and State laws and regulations."   Section 12-4.25(A)(a) of the Illinois Public Aid Code and section 140.16(a)(1) of the Illinois Administrative Code provide that the Department may terminate a vendor's eligibility to participate in the medical assistance program when it determines that the vendor is not complying with the Department's policy or rules or regulations or with the terms and conditions prescribed by the Department in any vendor agreement.  305 ILCS 5/12-4.25(A)(a) (West 2000); 89 Ill. Adm. Code §140.16(a)(1) (2000).

In the letter dated February 9, 1998, the Bureau requested that the plaintiff complete and return, within two weeks, a physician's information questionnaire and provide copies of his current professional licenses.  The questionnaire requested information regarding how many offices and employees the provider has; whether the provider has an interest in a pharmacy, transportation company, or long-term care company; how many patients the provider treats; and whether he has a laboratory.  The requested information was information in connection with the rendering of services or supplies to recipients by the provider, pursuant to sections 140.12(f) and 140.16(a)(4) of the Illinois Administrative Code (89 Ill. Adm. Code §§140.12(f), 140.16(a)(4) (2000)).  

The plaintiff failed to provide the information in the form and manner requested by the Department, and the information was in connection with the rendering of services or supplies to recipients by the plaintiff.  See 89 Ill. Adm. Code §§140.12(f), 140.16(a)(4) (2000).  The ALJ properly concluded that by not completing the questionnaire or providing copies of the professional documents, the plaintiff violated sections 140.12(f) and 140.16(a)(4) of title 89 of the Illinois Administrative Code and, therefore, violated section 12-4.25(A)(a) of the Illinois Public Aid Code, section 140.16(a)(1) of title 89 of the Illinois Administrative Code, and paragraph four of the plaintiff's provider agreement by failing to comply with the Department's regulations.  The ALJ's conclusions were not clearly erroneous.  See 
City of Belvidere
, 181 Ill. 2d at 205.  The circuit court's decision–that the plaintiff's failure to respond was not sufficient to terminate him because he had not refused to provide the documents–was in error, and we therefore reverse that part of the circuit court's judgment finding that the plaintiff was improperly terminated on this basis.

CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Madison County.  We remand the cause to the trial court to determine the appropriate attorney fees pertinent to the issue involving the medical records, which the plaintiff can properly recover under the Illinois Administrative Procedure Act (5 ILCS 100/10-55 (West 2000)).

Affirmed in part and reversed in part; cause remanded.

GOLDENHERSH and DONOVAN, JJ., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 08/06/03.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.