No. 2--07--0386     Filed: 7-2-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| McHENRY COUNTY DEFENDERS, INC., and SUSAN HAYDEN, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiffs-Appellants and Cross-Appellees, | ) ) ) | |
| v. | ) ) | No. 05--MR--109 |
| THE CITY OF HARVARD, CHUCK MARZAHL, PHIL ULMER, JOEL BERG, SCOTT DIKUN, SCOTT LOGAN, DARRELL PERKINS, TOM HAY, JAY NOLAN, BRIAN LEYDEN, DEBRA SZCZAP, and RICK ADAMS, | ) ) ) ) ) ) ) ) | |
| Defendants-Appellees and Cross-Appellants. | ) ) ) ) | Honorable Maureen P. McIntyre, Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, McHenry County Defenders, Inc., and Susan Hayden, brought an action under section 17 of the Illinois Natural Areas Preservation Act (Preservation Act) (525 ILCS 30/17 (West 2004)) and section 11(b) of the Illinois Endangered Species Protection Act (Endangered Species Act) (520 ILCS 10/11(b) (West 2004)) (collectively Acts), seeking to require the City of Harvard (City) and its elected officials (collectively defendants) to engage in environmental consultations with the Illinois Department of Natural Resources (IDNR). Plaintiffs alleged that the Acts required defendants to engage in such consultations before passing ordinances allowing Meyer Material

(Meyer) to proceed with a proposed gravel pit and mining operation on several hundred acres of land that the City agreed to annex. The trial court granted summary judgment for plaintiffs, ruling that defendants had violated the relevant statutes by failing to consult with the IDNR before passing ordinances regarding the gravel mining operation. The trial court ordered defendants to consult with the IDNR. However, the trial court had also previously granted defendants' motion to dismiss plaintiffs' request to declare the relevant ordinances void. It had further denied plaintiffs' motion for leave to amend their complaint to request that the City be ordered to pass an ordinance nullifying the previous ordinances. Plaintiffs seek such relief on appeal. Defendants have filed a cross-appeal in which they argue that the trial court erred in granting summary judgment for plaintiffs, because the gravel mining operation was not funded, carried out, or authorized by the City, as required by the Acts, and because the consultation process was completed in both 2001 and 2005. We affirm.

## I. BACKGROUND

Plaintiff McHenry County Defenders, Inc., is a nonprofit corporation dedicated to environmental preservation. Plaintiff Susan Hayden is a City resident who lives about one quarter of a mile south of the subject property. The City is located in McHenry County. When this case originated, defendant Jay Nolan was the City's mayor and defendants Chuck Marzahl, Phil Ulmer, Joel Berg, Scott Dikun, Scott Logan, Darrell Perkins, and Tom Hay were City aldermen. During the pendency of the case, Brian Leyden, Debra Szczap, and Rick Adams were elected City aldermen and added as defendants.

The subject site is located at 8605, 8521, and 9106 Lawrence Road and consists of about 792 acres. Before annexation, the property was located in unincorporated McHenry County, next to but outside of the City's corporate limits. It was zoned under a McHenry County zoning ordinance as

" 'A-1' -- Agricultural" and was used as farmland. The Lawrence Creek flows through the subject property and into the Piscasaw Creek, which is downstream from the property. The Piscasaw Creek area is a Natural Area Inventory Site (Inventory Site) (see 525 ILCS 30/17 (West 2004); 17 Ill. Adm. Code §4010.110 et seq., adopted at 18 Ill. Reg. 7253 (eff. May 3, 1994)) that begins at the Wisconsin border and follows the path of the Piscasaw Creek through McHenry County. According to plaintiffs, the creek flows a little more than one quarter of a mile west of the proposed gravel mine.

The Slippershell mussel and the Blandings turtle are on the State's list of threatened species. Hayden is a wildlife ecologist for the McHenry County Conservation District (Conservation District), where she is responsible for inventorying several animal groups, including the Slippershell mussel and the Blandings turtle. The Lawrence Creek runs within 100 feet of Hayden's property. Hayden has documented a Blandings turtle about 1,000 feet from the subject property, between the site and Lawrence Creek. She has also documented a Blandings turtle in Beck's Woods, which is an Inventory Site through which the Piscasaw Creek runs. Hayden has tracked about two to six Blandings turtles every year since 1999. The Conservation District has documented Slippershell mussels in the Lawrence and Piscasaw Creeks, within one mile of the subject property.

At all relevant times, Meyer has owned the subject property. In 2004, Meyer sought to have the City annex the property, and it also sought a conditional use permit and zoning variance to allow it to use the property for a gravel mining operation. On December 8, 2004, after public hearings, the City adopted ordinances to: (1) approve an annexation agreement between it and Meyer regarding the subject property (ordinance No. 2004-159); (2) annex the property into the City's corporate limits (ordinance No. 2004-160); and (3) grant a conditional use permit and zoning variance to allow the property to be used for a gravel mining operation (ordinance No. 2004-161).

The annexation agreement contains a recital stating that the City has "concluded that the annexation of the Property to the City *** would enable the City to control the development of the area and serve the best interest of the City." The agreement further provides, in relevant part, as follows. The City will enact an ordinance annexing the property. The City will also adopt an ordinance amending the City's zoning map to classify the property as "M-1, Manufacturing District," with conditional use for a sand and gravel operation; a concrete crushing and recycling facility; a concrete ready mix plant; and a bituminous asphalt plant. The conditional use permit for the bituminous asphalt plant requires that Meyer pay the City 30 cents for each ton of asphalt hauled from the property. The City has a right to stop all operations on the property if the annexation agreement or a City ordinance is violated. Excavation is not to take place within 100 feet of any street or boundary line, and setbacks for deep mining shall be at least 150 feet. Meyer shall landscape the property's boundaries in accordance with the "Mine Report" plan, along with some additional requirements. Meyer will install additional fencing consistent with recommendations made by the City's engineer. After 10 years, Meyer must donate 50 acres of the land to the City to use as a park. The agreement also contains requirements regarding things such as reclamation, storm water detention, dumping, days and hours of operation, entrances, ground water, site maintenance, and fees.

In August 2001, several years before the City annexed the subject property, Meyer initiated an environmental consultation process with the IDNR pursuant to the Acts. At that time, the IDNR determined that there were no endangered or threatened species in the area. In September 2001, the IDNR issued an "Endangered Species Consultation Program Agency Action Report" that stated that the consultation process was terminated.

In November 2004, around the time Meyer petitioned the City for annexation of the subject property, the IDNR, through Keith Shank, notified the City that it was requiring a new consultation because the previous consultation was over two years old and because, since that time, the IDNR had received reports documenting sightings of the Blandings turtle and the Slippershell mussel near the subject property. The IDNR believed that the proposed gravel mining operation could possibly adversely affect these species and the Piscasaw Creek Inventory Site. David Nelson, a City employee, responded to Shank's e-mail by stating that he had passed the information on to Meyer and its engineers, and that "[o]bviously the City of Harvard will not sign off on this proposal without this review, and direction from the department."

On March 25, 2005, Meyer applied for a surface mining permit with the IDNR's Office of Mines and Minerals (OMM). In processing the application for the permit, the OMM began an environmental consultation process with the IDNR's Office of Realty and Environmental Planning (OREP), pursuant to the statutes at issue. The OREP issued letters opining that the project was likely to adversely impact the essential habitat of the Blandings turtle and Slippershell mussel and the species themselves. The OREP recommended, among other things, that no mining be performed between November and March; that exclusionary fencing be installed before construction begins, to keep turtles out of construction areas; and that artificial nesting grounds for the turtles be constructed to offset any that may be destroyed. It also recommended that Meyer obtain an "Incidental Take Authorization" in case Blandings turtles were destroyed in the course of construction or mining activities. On October 31, 2005, the OREP terminated the consultation process with the OMM. On March 3, 2006, the OMM issued Meyer a mining permit.

Plaintiffs filed the instant action on June 6, 2005. Plaintiffs asked the trial court to: (1) declare that the City violated section 17 of the Preservation Act and section 11(b) of the Endangered Species Act by not engaging in environmental consultations before approving the annexation agreement and Meyer's petition for rezoning; (2) declare void City ordinance Nos. 2004-159, 2004-160, and 2004-161; (3) issue a writ of mandamus requiring the City to consult with the IDNR; and (4) award plaintiffs their costs.

On August 16, 2005, defendants filed a combined motion to dismiss under sections 2--615 and 2--619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615, 2--619 (West 2004)). As section 2--615 grounds for dismissal, defendants argued that, under the Acts, plaintiffs could pursue only writs of mandamus and could not obtain monetary or declaratory relief. As section 2--619 grounds for dismissal, defendants argued that plaintiffs did not have standing to pursue declaratory or monetary relief and that the aldermen were immune from suit as government officials.

On November 8, 2005, the trial court granted defendants' motion as to plaintiffs' request for a declaration that the ordinances were void. The trial court stated that it did not believe the Acts provided it with the authority to declare the ordinances void. The trial court denied the remainder of defendants' motion to dismiss. Plaintiffs thereafter sought leave to amend their complaint to request that the trial court order the City to pass an ordinance invalidating the contested ordinances. The trial court denied this motion on February 7, 2006.

On December 15, 2006, defendants filed a motion for summary judgment. Defendants argued that the City was not required to engage in an environmental consultation, because the City did not authorize, fund, or carry out the project, the trigger for the consultation requirement under the Acts. They further argued that consultations regarding the subject property were completed and

terminated in 2001 and 2005. Last, defendants argued that plaintiffs' action was moot because the IDNR had terminated the latest consultation and issued Meyer a mining permit. On December 18, 2005, plaintiffs filed a cross-motion for summary judgment, arguing that, because the City had not personally consulted with the IDNR, the City was in violation of the Acts.

On March 16, 2007, the trial court granted plaintiffs' motion for summary judgment and denied defendants' motion for summary judgment. The trial court ruled that defendants had violated section 17 of the Preservation Act and section 11(b) of the Endangered Species Act by authorizing Meyer's gravel mining operation without first consulting with the IDNR. The trial court granted plaintiffs' mandamus request and ordered defendants to consult with the IDNR within 45 days. Plaintiffs timely appealed, and defendants timely cross-appealed.

## II. ANALYSIS

We begin by setting forth the relevant statutes. Section 17 of the Preservation Act states in its entirety:

"All public agencies shall recognize that the protection of nature preserves, buffer areas and registered areas is the public policy of the State and shall avoid the planning of any action that would adversely affect them.

It shall be the public policy of each agency of State or local government to utilize its authority in furtherance of the purposes of this Act, and to evaluate, through a process of consultation with the Department, whether the actions, including capital projects, that are authorized, funded, or carried out by the agency of State or local government are likely to result in the destruction or adverse modification of any natural area that is registered under this Act or identified in the Illinois Natural Areas Inventory.

The evaluation shall be conducted early in the planning of a proposed action. If the proposed action is found likely to have an adverse impact on a natural area, the agency shall study the proposed action to determine possible methods of eliminating or mitigating the adverse impact. Before implementing any action, the agency shall attempt to mitigate or eliminate any adverse impacts in a manner consistent with the planned action. The Department, Commission, or <u>any affected person may seek a writ of mandamus to compel an agency of State or local government to engage in the evaluation and study required by this Section</u>." (Emphasis added.) 525 ILCS 30/17 (West 2004).

Section 11(b) of the Endangered Species Act states in relevant part:

"It is the public policy of all agencies of State and local governments to utilize their authorities in furtherance of the purposes of this Act by evaluating through a consultation process with the Department whether actions <u>authorized, funded, or carried out</u> by them are likely to jeopardize the continued existence of Illinois listed endangered and threatened species or are likely to result in the destruction or adverse modification of the designated essential habitat of such species, which policy shall be enforceable only by writ of mandamus[.]" (Emphasis added.) 520 ILCS 10/11(b) (West 2004).

We first address the arguments defendants raise in their cross-appeal, as they are potentially dispositive of the case. Defendants argue that the trial court erred in granting summary judgment for plaintiffs, because the proposed gravel mining operation was not "authorized, funded, or carried out" by the City, the prerequisite for the consultation requirement under section 17 of the Preservation Act and section 11(b) of the Endangered Species Act. It is undisputed that the City did not fund or carry out the operation, so the sole issue is whether the City "authorized" it.

We pause to set forth the applicable standard of review. Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Murray v. Chicago Youth Center, 224 Ill. 2d 213, 228 (2007). We review de novo a grant of summary judgment. People ex rel. Department of Public Health v. Wiley, 218 Ill. 2d 207, 220 (2006).

This court extensively discussed the meaning of the term "authorized" in Pierce Downer's Heritage Alliance v. Village of Downers Grove, 302 Ill. App. 3d 286 (1998). In that case, Advocate Health and Hospital Corporation owned 70 acres of land in Downers Grove. The southern portion of the land was developed with a hospital and other buildings while the northern portion was undeveloped and adjacent to a wooded area protected as an Inventory Site. Pierce Downer's, 302 Ill. App. 3d at 289. Advocate decided to build a "Wellness Center" occupying 8.22 acres in the northern portion of the land. It applied for a certificate of need from the Illinois Health Facilities Planning Board (Board). Advocate also applied to Downers Grove for an amendment to its planned unit development to allow the construction of the Wellness Center. Pierce Downer's, 302 Ill. App. 3d at 290. Downers Grove's plan commission held a public hearing on the request and then voted to approve it. The plan commission noted in its findings that, at Advocate's request, the IDNR had already conducted and concluded an environmental consultation regarding the project. Downers Grove thereafter passed an ordinance approving Advocate's amendment to its planned unit development. Pierce Downer's, 302 Ill. App. 3d at 291.

The plaintiffs subsequently filed a complaint against Downers Grove, the Board, and others, seeking to require Downers Grove and the Board to participate in environmental consultations.

Pierce Downer's, 302 Ill. App. 3d at 291. The trial court granted the defendants' motions to dismiss the complaint. Pierce Downer's, 302 Ill. App. 3d at 292. On appeal, this court noted that Downers Grove and the Board were required to consult with the IDNR only if they " 'authorized, funded, or carried out' " the Wellness Center's construction, and, like in the instant case, it was undisputed that Downers Grove and the Board did not fund or carry out the project. Pierce Downer's, 302 Ill. App. 3d at 295.

In analyzing the term "authorized," particularly as used in section 17, this court noted that the language of a statute should be given its plain and ordinary meaning. Pierce Downer's, 302 Ill. App. 3d at 295. We referenced Black's Law Dictionary as defining the term "authorized" as " '[t]o empower' or 'to give a right or authority to act.' " Pierce Downer's, 302 Ill. App. 3d at 296, quoting Black's Law Dictionary 122 (5th ed. 1979). We determined that the Board had not "authorized" the project because, although the certificate of need was necessary for Advocate to operate the Wellness Center as a medical facility, Advocate did not need the certificate to construct the building itself and the Board had no role or control in the planning or design of the project. Pierce Downer's, 302 Ill. App. 3d at 296.

Regarding Downers Grove, we stated that the dictionary definition of "authorize" could lead to the conclusion that Downers Grove's approval of the project was an "authorization" of the project. Pierce Downer's, 302 Ill. App. 3d at 296. However, we noted that statutes should be construed as a whole to give effect to the legislature's intent, and that section 17 had a policy declaration that public agencies should avoid "planning" any action that would adversely affect nature preserves, buffer areas, and registered areas. Pierce Downer's, 302 Ill. App. 3d at 296-97. We cited the American Heritage Dictionary definition of "planning" as " 'to form a scheme or program for the

accomplishment or attainment of a specific aim and purpose.' " Pierce Downer's, 302 Ill. App. 3d at 296, quoting American Heritage Dictionary 1044 (3rd ed. 1993). We determined that the legislature's use of the word "planning" prevented us from adopting the broad dictionary definition of the term "authorize," because the term "planning" seemed to require that the public agency have a role in "forming" the scheme or program. Pierce Downer's, 302 Ill. App. 3d at 297. We stated that "such a role clearly requires more active participation in the action than that which would satisfy the traditional dictionary definition of the term 'authorize.' " Pierce Downer's, 302 Ill. App. 3d at 297. We concluded that the legislature's use of the word "authorize" was not meant to include the type of action undertaken by Downers Grove, because it did not develop, plan, or construct the Wellness Center, and its approval of a modification to a planned unit development was not the type of "planning" the legislature intended in the preface of section 17. Pierce Downer's, 302 Ill. App. 3d at 297.

This court went on to state that we believed that section 17 was meant to apply in situations where the governmental entity was actively participating in the action, with a direct role in planning, designing, funding, constructing, or carrying out the action. As support, we pointed out that the legislature required only governmental agencies to engage in the consultation process. We reasoned that, if the legislature had intended to include private projects within the scope of section 17, the legislature would have also required the private parties planning such projects to obtain environmental consultations. This was especially true because section 17 stated that the consultation should occur in the initial planning of an action, and the inclusion of private parties would facilitate the process and maximize its effectiveness. In contrast, Downers Grove's approval was the last step before construction of the Wellness Center began. Pierce Downer's, 302 Ill. App. 3d at 297. We

additionally cited a comment made during senate debates on the legislation as evidence that section 17 was meant to apply just to actions with direct governmental involvement. Pierce Downer's, 302 Ill. App. 3d at 298.

In response to the plaintiffs' argument that administrative regulations required an environmental evaluation for private property zoning decisions that could have an adverse environmental impact, we noted that Downers Grove did not have to change the property's zoning when it approved Advocate's amendment to its planned unit development. Pierce Downer's, 302 Ill. App. 3d at 298. We also stated that there was an applicable exception in the regulations for " 'change of zoning requests for land currently zoned, developed, and used in its entirety for commercial, industrial or residential purposes.' " Pierce Downer's, 302 Ill. App. 3d at 298, quoting 17 Ill. Adm. Code §1075.30(c)(8) (1996). Finally, we stated that "an administrative agency may not use its rules and regulations to expand the scope of a piece of legislation to include requirements not found in the statute," and, to the extent the IDNR's regulations required a local government to obtain consultations every time it approved the construction of private projects on private property, we believed that the IDNR had exceeded its authority under the Preservation Act. Pierce Downer's, 302 Ill. App. 3d at 298-99.

One justice dissented from the majority's analysis of the term "authorization." He noted that Illinois courts had held that "authorized" means " 'given or endowed with authority' or 'legally or duly sanctioned.' " Pierce Downer's, 302 Ill. App. 3d at 300-01 (Bowman, J., specially concurring in part and dissenting in part), quoting In re Disconnection of Certain Territory from the Sanitary District, 111 Ill. App. 3d 339, 344 (1982). He pointed out that the dictionary typically relied on by this court similarly defined "authorized" as " 'endowed with *** [or] sanctioned by authority.' " Pierce

Downer's, 302 Ill. App. 3d at 301 (Bowman, J., specially concurring in part and dissenting in part), quoting Webster's Third New International Dictionary 147 (1986). He stated that he would find that section 17 encompassed the decisions of both Downers Grove and the Board because the construction of the Wellness Center and its use as a health facility were "authorized" by and "legally or duly sanctioned" by these governmental entities, and Advocate would not have been able to construct and operate the Wellness Center without their approval. Pierce Downer's, 302 Ill. App. 3d at 301 (Bowman, J., specially concurring in part and dissenting in part).

Regarding section 17's use of the word "planning," the dissenting justice stated that Webster's Third New International Dictionary defined that term as " 'the act or process of making or carrying out plans,' specifically, 'the establishment of goals, policies, and procedures for a social or economic unit.' " Pierce Downer's, 302 Ill. App. 3d at 301 (Bowman, J., specially concurring in part and dissenting in part), quoting Webster's Third New International Dictionary 1731 (1986). In light of this definition, he believed that the phrase " 'planning of any action' " in section 17 specifically referred to actions undertaken by a governmental agency, while the language " 'the actions *** authorized' " by a governmental agency encompassed the actions of both public agencies and other parties. Pierce Downer's, 302 Ill. App. 3d at 301 (Bowman, J., specially concurring in part and dissenting in part). He concluded that, by not consulting with the IDNR about the environmental impact of Advocate's project before authorizing the action, Downers Grove failed to comply with the legislature's intent in enacting section 17. Pierce Downer's, 302 Ill. App. 3d at 301-02 (Bowman, J., specially concurring in part and dissenting in part).

Defendants preliminarily argue that, although the Pierce Downer's court interpreted the word "authorized" solely as used in section 17 of the Preservation Act, the term as used in section 11(b)

of the Endangered Species Act should be interpreted similarly. Defendants maintain that both acts have similar language, stated purposes, requirements, and remedies, in that both seek to preserve natural resources, require environmental consultations regarding the impact of projects in which governments are involved, and allow for writs of mandamus to compel the required consultations. Indeed, "[a] court presumes that two or more statutes which relate to one subject are governed by one spirit and policy, and that the legislature intended the statutes to be operative and harmonious." Henrich v. Libertyville High School, 186 Ill. 2d 381, 391-92 (1998). Accordingly, we agree with defendants and interpret the word "authorized" consistently in both of the statutes at issue.

Defendants further argue that, under Pierce Downer's, the City did not "authorize" the gravel mining operation by passing several zoning ordinances. Defendants argue that the City did not actively participate in the project, because the City did not plan, design, fund, construct, or participate in any of the mine's operations. Defendants maintain that the ordinances at issue did not even allow the gravel mining project to begin, because Meyer still had to obtain a mining permit or authorization from the IDNR, which issued the permit on March 3, 2006. Defendants argue that, if any state agency authorized the gravel operation, it was the IDNR, not the City. Defendants therefore maintain that the City was not required to consult under either the Preservation Act or the Endangered Species Act, and that the trial court erred by granting summary judgment for plaintiffs on this issue.

Plaintiffs argue that, unlike Pierce Downer's, where IDNR regulations expressly exempted the subject action, in this case the IDNR regulations mandated a consultation. Plaintiffs point out that section 1075.30(a) of Title 17 of the Administrative Code requires a consultation where the proposed action is "authorized, funded, or performed" by a governmental entity and the action will

change environmental conditions, adversely impact a listed species or its essential habitat, and/or adversely affect a natural area. 17 Ill. Adm. Code §1075.30(a), amended at 19 Ill. Reg. 594 (eff. January 9, 1995). Such actions include, among other things: (1) the "alteration, removal, excavation *** , or dredging of soil, sand, gravel, minerals, *** or naturally occurring material of any kind"; (2) the "changing of existing drainage characteristics or sedimentation patterns"; (3) the "grading or removal of materials that would alter existing topography"; and (4) the "creation of new, or the increase in permanent barriers to the movement of wildlife." 17 Ill. Adm. Code §1075.30(a), amended at 19 Ill. Reg. 594 (eff. January 9, 1995). Plaintiffs argue that all these conditions apply because the gravel pit necessarily involves the excavation of gravel and the alteration of existing topography, and because Meyer planned to make a lake on the property, which would change drainage patterns and create a barrier to wildlife movement. Plaintiffs further point out that the regulations also require a consultation if there is "an application for rezoning from a non-urban classification to an urban classification" (17 Ill. Adm. Code §1075.30(a)(8), amended at 19 Ill. Reg. 594 (eff. January 9, 1995)), which occurred here.

Defendants do not dispute that the gravel operation falls within these enumerated activities, though they dispute that the City "authorized" the project. They also note that in Pierce Downers we stated that we did not believe that the legislature intended to require local governments to obtain consultations every time they approved the construction of private projects on private property, and that, to the extent IDNR regulations required this, the agency had exceeded its authority under the Preservation Act. Pierce Downer's, 302 Ill. App. 3d at 298-99. Defendants argue that, under this reasoning, any IDNR regulations requiring consultation in this case are invalid.

Plaintiffs counter that, regardless of the regulations' validity, the City's actions also meet the definition of "authorized" as interpreted by the Pierce Downer's court. We agree. As the trial court noted, at one of the hearings on Meyer's petition for annexation, a land consultant serving as a witness for Meyer testified that the City had a "2015 Plan" that was a comprehensive planning tool for growth. That plan called for the property at issue to remain agricultural, adjacent to land planned for low density residential property. The witness testified that the land had not been planned for manufacturing or mining, because the City did not designate any areas for mining other than those mines that already existed. The trial court further noted that, at another hearing, Meyer's attorney stated that the City engineer and outside experts hired by the City reviewed preliminary mining plans that Meyer submitted; that revisions were made to the plans; and that the City's outside experts also reviewed the final plans. Following these discussions and public hearings, the City approved the annexation agreement and incorporated the agreement through an ordinance. One of the recitals in the annexation agreement states that the "Corporate Authorities *** have concluded that the annexation of the Property to the City, under the terms and conditions hereinafter set forth, would enable the City to control the development of the area and serve the best interest of the City." The agreement imposes numerous requirements upon Meyer, such as the hours and days of business operation, the placement of fencing and berms in certain areas, the payment of various fees, and the eventual donation of 50 acres of land for a park.

Unlike in Pierce Downer's, where Downers Grove merely granted an amendment to a hospital's planned unit development as a last step before construction began, here the City was actively involved in the initial stages of planning the gravel mine, which in turn affected the City's original plans for the land. The City reviewed preliminary and final plans submitted by Meyer,

negotiated an annexation agreement under which Meyer was subject to various restrictions, and rezoned the property to allow for the operation of the gravel mine. This type of active participation, which influenced the planning of the gravel mine at early stages, clearly meets even the more stringent definition of "authorization" as set forth in the Pierce Downer's majority opinion. Therefore, the trial court correctly concluded that the statutes at issue required the City to consult with the IDNR.

Defendants alternatively argue that the trial court erred in granting summary judgment for plaintiffs, because the consultation process had already been completed by other parties. Defendants point out that in 2001 Meyer requested an environmental consultation regarding its proposed gravel mine under the statutes at issue. The IDNR reviewed the request, concluded at that time that the project did not threaten any endangered species or natural areas, and then issued a written agency report on September 12, 2002, completing and terminating the consultation process.

Defendants argue that the IDNR considered the environmental consultation requirement to be complied with even though a private party, rather than a unit of local government, initiated the consultation process. Defendants note that Todd Retting, the manager of the Division of Ecosystems and Environment within the IDNR,[1] testified in a deposition that most requests for consultations are made by private parties rather than governmental entities and that the IDNR participates in these consultations and terminates them on a regular basis without any participation by the applicable local governments. Defendants maintain that the IDNR accepts third-party consultations and interprets them as complying with the environmental consultation requirements of the Acts. Defendants cite

---

[1]It appears from the record that the Division of Ecosystems and Environment is within the OREP.

case law stating that courts generally defer to an agency's interpretation of statutes that the agency must enforce, due to the agency's experience and expertise in the area. See LaBelle v. State Employees Retirement System of Illinois, 265 Ill. App. 3d 733, 735 (1994). Defendants argue that the statutorily required environmental consultation for the subject property was successfully completed and terminated in 2001, did not expire, and was never reopened by the IDNR, so the City cannot be required to initiate another consultation process.

Defendants further argue that, even if we conclude that the 2001 consultation had somehow expired or that the IDNR had properly reopened the process, a second consultation process with the IDNR for the subject property was initiated, completed, and terminated in 2005 when the OMM consulted with the OREP. On October 31, 2005, after raising issues and making recommendations to the OMM, the OREP terminated the consultation process, and the OMM later issued Meyer a mining permit. Defendants argue that, through the 2005 consultation, the IDNR had a second opportunity to review the matter and determine whether listed species or natural areas were present and to make recommendations regarding the possible impact of the gravel mine. Defendants maintain that the statutory process for implementing the consultation was achieved and that it would simply be pointless for the City to complete a consultation yet another time.

We note that, while defendants rely on Retting's testimony to show that the IDNR accepts third-party requests for environmental consultations and interprets them as complying with the Acts, Retting also testified that he was not aware of instances where a private party was obligated to consult with the IDNR under the Acts and that there are instances where a unit of local government is obligated to consult with the IDNR under the Acts. He did not know of any provision that would allow the governmental entity to meet its consultation obligation if only a private party had engaged

in a consultation. Retting also testified that the OMM initiated a consultation in 2005 to comply with its obligations under the Acts. Thus, contrary to defendants' argument, Retting's testimony seems to indicate that he did not believe that a private-party environmental consultation could satisfy a governmental entity's obligation to consult with the IDNR. We further note that another OREP employee of the IDNR, Keith Shank, testified in a deposition that the City was required to consult with the IDNR about the gravel-pit project. It is undisputed that, in a November 5, 2004, e-mail, Shank informed the City that it was obligated to consult. Moreover, while defendants argue that we should defer to an agency's interpretation of its statutes, such deference occurs in the context of specific administrative decisions (see, e.g., Fleming v. Retirement Board of the Firemen's Annuity & Benefit Fund, 373 Ill. App. 3d 432, 436 (2007)) and is not based on one employee's deposition testimony. Cf. Rochester Buckhart Action Group v. Young, 379 Ill. App. 3d 1030, 1042 (2008) (Cook, J., dissenting) (court defers to findings of fact made by an administrative law judge at an administrative hearing, not factual findings determined by an administrative agency employee). Deference to an agency's interpretation of a statute also requires, as a prerequisite, that the statute be ambiguous. Quality Saw & Seal, Inc. v. Illinois Commerce Comm'n, 374 Ill. App. 3d 776, 782 (2007).

Here, the relevant statutes are not ambiguous in their requirement that public agencies engage in environmental consultations. Section 17 of the Preservation Act states that "[i]t shall be the public policy of each agency of State or local government to utilize its authority in furtherance of the purposes of this Act, and to evaluate, through a process of consultation with the Department, whether the actions *** that are authorized, funded, or carried out by the agency of State or local government are likely to result in the destruction or adverse modification of any natural area that is registered

under this Act or identified in the Illinois Natural Areas Inventory." (Emphasis added.) 525 ILCS 30/17 (West 2004). Section 11(b) of the Endangered Species Act similarly states that "[i]t is the public policy of all agencies of State and local governments to utilize their authorities in furtherance of the purposes of this Act by evaluating through a consultation process with the Department whether actions authorized, funded, or carried out by them are likely" to adversely impact endangered species. (Emphasis added.) 520 ILCS 10/11(b) (West 2004). Accordingly, a consultation between just a private party and the IDNR would not satisfy a governmental entity's obligation under the Acts to evaluate, through a consultation process with the IDNR, whether the action is likely to have a negative environmental impact. As a result, the City's obligations under the Acts were not satisfied by the 2001 and 2005 evaluations initiated by other entities and in which the City was not involved.

Our resolution of this issue is consistent with our decision in Pierce Downer's. There, the hospital that owned the property initiated an IDNR environmental consultation. The consultation was conducted and closed before the plaintiffs brought suit seeking to require Downers Grove to consult with the IDNR. Pierce Downer's, 302 Ill. App. 3d at 293. Downers Grove's plan commission expressly considered the consultation's results in reviewing Advocate's proposed amendment to its planned unit development. Pierce Downer's, 302 Ill. App. 3d at 293. The defendants therefore argued that based on these factors, and because Downers Grove had no direct control over the project's design other than to ensure compliance with applicable local ordinances, it would be a waste of time and resources to require another consultation, and the issue was moot. Pierce Downer's, 302 Ill. App. 3d at 293.

This court held that the issue was not moot, because neither Downers Grove nor the Board had participated in the consultation process, and they continued to deny their obligation to participate. Pierce Downer's, 302 Ill. App. 3d at 294. We "decline[d] the defendants' invitation to speculate how the consultation procedure would have been affected by [Downers Grove's] and the Board's participation." Pierce Downer's, 302 Ill. App. 3d at 294. We stated that the plaintiffs' complaint required us to determine whether those governmental entities were obligated to engage in the consultation and, if they were, to compel their participation. Pierce Downer's, 302 Ill. App. 3d at 294. In the instant case, we have determined that the City was required to engage in the consultation because it "authorized" the project at issue. Like in Pierce Downer's, we also conclude that consultations by other entities did not satisfy the City's obligations under the Acts.

We now turn to the issues plaintiffs raise in their appeal. Plaintiffs argue that the trial court erred in granting defendants' motion to dismiss their request to declare void City ordinance Nos. 2004-159, 2004-160, and 2004-161. Plaintiffs alternatively argue that the trial court erred by denying their motion to amend their complaint to request that the City pass new ordinances voiding the ordinances at issue.

The trial court did not specifically state whether it was granting defendants' motion to dismiss under section 2--615 or section 2--619 of the Code. However, we agree with plaintiffs that the trial court's statement that it did not believe that the Acts gave it authority to void the ordinances indicates that it was granting the motion to dismiss under section 2--615. A section 2--615 motion to dismiss attacks the legal sufficiency of the complaint and should be granted only where no set of facts could be proven under the pleadings that would entitle the plaintiff to relief. Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc., 227 Ill. 2d 381, 392 (2008). The grant of a section 2--615 motion to

dismiss presents a question of law, which we review de novo. Imperial Apparel, Ltd., 227 Ill. 2d at 392. The construction of a statute is also a question of law subject to de novo review. Wade v. City of North Chicago Police Pension Board, 226 Ill. 2d 485, 510-11 (2007). A trial court's denial of a motion for leave to amend a pleading will not be disturbed absent an abuse of discretion. County of Cook ex rel. Rifkin v. Bear Stearns & Co., 215 Ill. 2d 466, 474 (2005).

Plaintiffs argue that both Acts require that a local government conduct the consultation with the IDNR before the local government takes the action that triggers the duty to undertake the consultation. Plaintiffs maintain that the purpose of such a requirement is so that consultation can be part of the decision-making process. Plaintiffs note that section 17 of the Preservation Act states, "The evaluation shall be conducted early in the planning of a proposed action" (525 ILCS 30/17 (West 2004)), and they also note that both Acts expressly provide for citizens to bring mandamus suits to enforce the consultation requirement. Plaintiffs argue that a necessary corollary to the requested writ of mandamus ordering the City and its elected officials to consult with the IDNR is that the underlying ordinances that were passed in violation of the consultation requirement be voided, so that defendants could consider the issues contained in the ordinances in light of the results of the IDNR consultation. According to plaintiffs, to hold otherwise, as the trial court did, would render the citizen-suit mandamus provisions meaningless.

The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. Wisniewski v. Kownacki, 221 Ill. 2d 453, 460 (2006). The best indication of that intent is the statute's language when given its plain and ordinary meaning. Wisniewski, 221 Ill. 2d at 460. Where the statute's language is clear and unambiguous, we must apply it without resorting to other statutory construction aids. Wisniewski, 221 Ill. 2d at 460. Here, section 17 provides that

"any affected person may seek a writ of mandamus to compel an agency of State or local government to engage in the evaluation and study required by this Section." 525 ILCS 30/17 (West 2004). Similarly, section 11(b) of the Endangered Species Act provides that it "shall be enforceable only by writ of mandamus." 520 ILCS 10/11(b) (West 2004).

Defendants argue, and we agree, that the language of these statutes is clear and unambiguous in that the Acts expressly provide for a cause of action in the form of mandamus to compel a governmental entity to complete an environmental consultation and do not expressly provide for any other cause of action. Setting aside for the moment plaintiffs' argument that mandamus can include a declaration that the prior government action be voided, we consider plaintiffs' argument that the Preservation Act's permissive language cannot be construed to limit relief to mandamus. Plaintiffs note that, while section 11(b) of the Endangered Species Act states that its policy "shall be enforceable only by writ of mandamus" (emphasis added) (520 ILCS 10/11(b) (West 2004)), section 17 of the Preservation Act states that "any affected person may seek a writ of mandamus" (emphasis added) (525 ILCS 30/17 (West 2004)). Plaintiffs argue that, because the use of the word "may" is permissive, section 17 does not preclude pursuit of any other causes of action or relief.

Plaintiffs' argument is unavailing because, where a statute lists the thing or things to which it refers, the inference is that all omissions are exclusions, even in the absence of limiting language. People v. O'Connell, 227 Ill. 2d 31, 37 (2007). Similarly, the maxim of construction inclusio unius est exclusio alterius means that the inclusion of one thing implies the exclusion of another. In re Marriage of Knoerr, 377 Ill. App. 3d 1042, 1048 (2007). Here, because section 17 states that a person may seek a writ of mandamus to compel a consultation but does not list any other remedies, we interpret the statute to limit its citizen-suit remedy to a writ of mandamus. Plaintiffs rely on

Nottage v. Jeka, 172 Ill. 2d 386 (1996), where our supreme court held that a statute allowing attorneys to bring claims for fees did not preclude an attorney from pursuing a common-law action for contract damages. Nottage, 172 Ill. 2d at 392-93. Here, unlike in Nottage, plaintiffs have sought relief under only the statutes at issue, and those statutes allow for only mandamus relief.

We now return to plaintiffs' argument that the court has the power to declare an ordinance void where that is a necessary corollary of a writ of mandamus. Plaintiffs cite People ex rel. Klaeren v. Village of Lisle, 202 Ill. 2d 164, 178 (2002), for the proposition that, where proper procedures are not followed in passing an ordinance, the ordinance is void. Citing People ex rel. J.C. Penney Properties, Inc. v. Village of Oak Lawn, 38 Ill. App. 3d 1016, 1021 (1976), plaintiffs argue that Illinois has long recognized that a mandamus action may have a prayer for declaratory relief. Plaintiffs further argue that the Code envisions that a claim for mandamus can include those matters germane to the distinctive purpose of the proceeding, in that section 14--103 of the Code, which relates to actions for mandamus, states that "[n]o matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." 735 ILCS 5/14--103 (West 2004). Plaintiffs maintain that, in this case, the distinctive purpose of the mandamus provisions in both sections 17 and 11(b) is to order defendants to meaningfully comply with the statutory requirement to consult with the IDNR before passing ordinances annexing the subject property or granting conditional uses or variances for the property. Plaintiffs argue that such a distinctive purpose cannot be achieved if the ordinances passed in violation of the Acts are not voided, since a post-hoc consultation would not allow defendants to incorporate the IDNR's recommendations into the annexation agreement, conditional use permit, or variance. Plaintiffs refer to the principle of statutory construction that, in determining legislative intent, courts may consider

the reason and necessity of the law, the evils to be remedied, and the goals to be achieved. See People ex rel. Sherman v. Cryns, 203 Ill. 2d 264, 280 (2003).

Defendants argue that municipal ordinances are presumptively valid, though a party can bring a cause of action to invalidate a municipal ordinance if, for example, the ordinance is unconstitutional or the municipality did not comply with required constitutional or statutory procedures in enacting the ordinance. Defendants point out that in Klaeren the plaintiffs asserted a violation of their due process rights because they were denied the opportunity to cross-examine witnesses at a public zoning hearing. Klaeren, 202 Ill. 2d at 185. Defendants argue that here plaintiffs have not alleged such procedural or constitutional infirmities and instead rely solely on the Acts, which do not supply a basis by which to invalidate a municipality's ordinance.

We agree with defendants' argument. We further note that plaintiffs' reference to section 14--103 of the Code is entirely unconvincing, as that section deals with a defendant's answer in a mandamus proceeding. In any event, the question here is not whether a plaintiff could have an ordinance declared void through any type of mandamus action, but rather whether the Acts' provisions would allow the trial court to declare the City's ordinances void. As there is no common-law right to require a governmental entity to engage in environmental consultations, the Acts are in derogation of the common law. Statutes in derogation of the common law must be strictly construed in favor of those sought to be subjected to the statute's requirements. In re W.W., 97 Ill. 2d 53, 57 (1983). "[S]uch statutes will not be extended any further than what the language of the statute absolutely requires by its express terms or by clear implication." In re W.W., 97 Ill. 2d at 57.

While section 17 of the Preservation Act states that "[t]he evaluation shall be conducted early in the planning of a proposed action," its mandamus provision states that "any affected person may

seek a writ of mandamus <u>to compel an agency of State or local government to engage in the evaluation and study required by this Section</u>."  (Emphasis added.)  525 ILCS 30/17 (West 2004).  Construing this language strictly in favor of defendants, plaintiffs can seek only to have defendants engage in the evaluation, and section 17 does not allow plaintiffs to obtain the broader remedy of having ordinances declared void.  We note that the remedy provided to citizens by section 17 stands in stark contrast to the broad power granted to the Attorney General and State's Attorneys by section 21 of the Preservation Act, under which they may "institute a civil action for an injunction, <u>or other appropriate legal action</u>, to restrain violations of this Act or of any rule."  (Emphasis added.)  525 ILCS 30/21 (West 2004).

Section 11(b) of the Endangered Species Act has a more general remedy provision than section 17 of the Preservation Act, in that section 11(b) states that its "policy shall be enforceable only by writ of mandamus."  520 ILCS 10/11(b) (West 2004).  However, construing the statute's language strictly in defendants' favor, we find nothing in the statute that would allow the trial court to void the City's ordinances in an action brought under that section.  Moreover, in <u>Glisson v. City of Marion</u>, 188 Ill. 2d 211 (1999), our supreme court stated that section 11(b) "does not contain any language that expressly grants a private cause of action for a violation of the [Endangered Species] Act, <u>with the exception of allowing the enforcement of the consultation process by a writ of mandamus</u>."  (Emphasis added.)  <u>Glisson</u>, 188 Ill. 2d at 223.  This statement supports our conclusion that section 11(b) does not provide any avenues of relief for a private citizen beyond requiring the governmental entity to engage in a consultation.  Accordingly, we conclude that the trial court did not err in granting defendants' motion to dismiss plaintiffs' request to have the ordinances declared

void, nor did it abuse its discretion in denying plaintiffs' motion to amend their complaint to request that the City pass a new ordinance voiding the previous ordinances.

Though plaintiffs argue that such an interpretation renders the citizen-suit mandamus provisions meaningless, we disagree. While an environmental consultation may be most effective early in the planning process, we cannot say that it would have no value later on. Indeed, here the 2002 evaluation obtained by Meyer indicated that there were no endangered species or natural areas, whereas the 2005 evaluation obtained by the OMM indicated the presence of two threatened species that could be adversely affected by the project. Though the City will not be able to incorporate the results of a new evaluation into the annexation negotiations with Meyer, the City could still request that Meyer consider the results, and the City and Meyer may engage in future negotiations where the City could seek to have Meyer implement particular recommendations. Finally, by being ordered to engage in an evaluation, from this point forward the City would presumably seek to fulfill its statutory obligations and avoid future litigation by obtaining evaluations early in the process of other actions that fall under the Acts.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the McHenry County circuit court.

Affirmed.

McLAREN and ZENOFF, JJ., concur.